In the matter of the estate of MARGARET B. MILLER, deceased.

[Decided June 21st, 1916.]

1. Evidence *held* to show testamentary capacity of testator.

2. The burden of proof of proving absence of undue influence rests upon the beneficiary proponent, and not upon the caveators.

3. Evidence *held* to show absence of undue influence or fraud.

On appeal from a decree of the Passaic county orphans court on probate of will.

*Mr. William B. Gourley,* representing the proponent.

*Messrs. Whitehead & Appleton,* representing the caveator.

LEWIS, VICE-ORDINARY.

This is an appeal taken from a decree of the Passaic county orphans court, admitting probate of an instrument offered for probate as the last will and testament of Margaret B. Miller.

Isaac N. Miller was named as executor in the said instrument, and he is the sole beneficiary thereunder.

The will is dated November 16th, 1913. The decedent departed this life on December 18th, 1913. The instrument purporting to be her last will and testament was offered for probate and was allowed by the surrogate. An appeal was taken to the orphans court of Passaic county, which upheld the probate of the will, and thereupon an appeal was taken to this court.

There is no opinion filed in the court below, so I am unable to ascertain without reviewing the testimony the grounds upon which it arrived at the conclusion that the instrument offered should be offered for probate.

The testimony shows that the decedent was an elderly woman who had lived with her husband, the beneficiary under her will, for a great many years, in the house in which she died. The

In re Miller's Estate.                    87 N. J. Eq.

will was prepared by her husband during her last illness. She had previously made another will, bearing date October 31st, 1905, which will, according to the testimony, her husband knew nothing about until November 16th, 1913, the day of the date of the will under examination. It appears upon that day she sent for her husband, who was in constant attendance upon her during the times he was not at business, and told him about the prior will and that she wanted to make a new one. He thereupon drew the will, which was executed by his wife, Miss Miller, a niece, and Miss Cole, the nurse in attendance on Mrs. Miller, acting as witnesses.

The property that she disposed of consisted largely of real estate, although there was some money in the banks belonging to her. Many years before, her husband had purchased the property which they lived in at Lakeview, New Jersey, and had put it in her name, together with all other real estate that he held. Much is attempted to be made of the fact that Mrs. Miller received from her brother, Leonard Blass, six thousand four hundred dollars ($6,400) and some odd, and it is this money which was used to maintain the property at Lakeview and in New York. It appears, however, conclusively, checks and vouchers being offered to sustain the evidence, that altogether on the properties devised by Mrs. Miller under her will, her husband had expended, in round figures, the sum of twenty-nine thousand dollars ($29,000).

It is also shown that mutual wills were made at the outset of the married life of this couple. Miller had been most attentive and kind to his wife. He lived with her thirty-eight years, and she had no independent estate, save that which came from her brother. The only resources she had otherwise came from her husband. An effort was made to show that Miller and his wife frequently had trouble over a certain woman, not named, who, after the death of Mrs. Miller, became the wife of her husband and the beneficiary under his will, but, upon cross-examination, Jane Van Dorn, who had free access to the home at all times, and who had worked in the Miller home for six years, and being a witness produced by the caveators, stated that she had never

*87 N. J. Eq.* In re Miller's Estate.

heard Miller say a cross or unkind word to his wife. The testimony of Miss Bonney and Miss Rocherfeller, both interested in upsetting the will of November 16th, 1913, being beneficiaries under the prior will, has not the probative force of Miss Van Dorn's testimony. The evidence of the niece, Miss Miller, and the nurse, Miss Cole, corroborates Miss Van Dorn's as to the kindly consideration for and attentive attitude of Miller toward his wife.

I must conclude, upon all the evidence, that Miller's conduct indicated both concern and affection for his wife. She was ill for a long time and had abundant opportunity to consider her worldly affairs during her illness. It was but natural that in the contemplation of final dissolution that she should desire to do that which was right and conscientious in disposing of the property which had come to her hands. This, in my view, she did when she made the last will leaving her entire estate to her husband.

The evidence of Miss Miller, Miss Cole, Miss Van Dorn and Miller, and, indeed, all the witnesses produced, satisfies me as to the testamentary capacity of Mrs. Miller. She knew where all her belongings were, and requested that certain disposition be made of them during her last days of life. She told where the satchel and the jewelry were, and who had the key to the wardrobe. The testimony is, that while she was in a weakened condition, the coma which undertook and overcame her at times, was a natural result of the prolonged and fatal illness through which she was passing.

I cannot agree with the court below in its view that the burden of establishing that Miller did not use undue influence over his wife should be borne by the caveator. There is no doubt that the burden shifted to the proponent, he being the chief beneficiary, and occupying a position of trust and confidence, he must show that he did not procure the making of the will by undue influence. The proofs lead me to the conclusion that the proponent has sustained the burden cast upon him.

The execution of the will was established by the subscribing witnesses. The evidence they offered showed that a sufficient

compliance was made with the statutory regulations. Miller was called to the witness-stand and examined at considerable length by the counsel for the caveators about the proceedings at the time of the execution of the will. His story bears the evidence of verity, and he is corroborated by the subscribing witnesses. There is no evidence whatever to show that he attempted to influence his wife in regard to the making of the will. She sent for him and told him to prepare it. He drew it and read it aloud to her. The witnesses to the execution had stepped into another room during the reading of the will. They returned, however, almost immediately and subscribed to the instrument at her request. It was natural for Miller, who is a member of the bar, and whose confidential and affectionate relationship with his wife is shown throughout all the testimony, should draw the will and not send for another to do it.

In fact, I do not find upon examination of the entire case a scintilla of evidence indicating any irregularity or fraud about the execution of the will.

The decree below must be affirmed.